IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.

Case No. 18–CR–40003–JPG–1

DENNIS R. THACKER,
Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dennis R. Thacker's Motion for Compassionate Release. (ECF No. 137). For the reasons below, the Court **DENIES** Thacker's Motion.

### I.  PROCEDURAL & FACTUAL HISTORY

#### A.  The Conviction

In 2018, a federal grand jury in this District indicted Thacker for (1) conspiracy to distribute and possess with intent to distribute Alpha-Pyrrolidinopentiophenone ("Alpha-PVP" or "bath salts"), (2) distribution of Alpha-PVP, and (3) possession with intent to distribute Alpha-PVP. (Indictment 1–2, ECF No. 1). He pleaded guilty about four months later, (Plea Agreement 1, 11, ECF No. 19); and the Court sentenced him to a 168-month term of imprisonment, (Judgment 3, ECF No. 6). He is currently incarcerated at Federal Correctional Institution ("FCI") Forrest City Low in Arkansas. (Def.'s Mot. for Compassionate Release at 2).

#### B.  The Presentence Investigation Report

Before sentencing, the Court considered the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office, which provided information about the nature and circumstances of the offense and Thacker's background. (PSR 1, ECF No. 57).

According to the PSR, Thacker first "made plans to distribute [Alpha-PVP] . . . as a money-making venture" while incarcerated for another crime. (*Id.* at 5).   Upon his release, "Thacker ordered kilogram quantities of Alpha-PVP on a weekly basis . . . which was delivered to his residence, or the homes of coconspirators." (*Id.* at 4–5). Thacker directed three others to make the payments using wire transfers, and they were rewarded with bath salts of their own. (*Id.* at 4). "Once [Thacker] received the shipment, he divided the kilogram quantities into smaller amounts for distribution." (*Id.*). He then fronted some of the bath salts to his coconspirators, who would sell it and reimburse him. (*Id.*). "[H]e sold the entire kilogram quantity within two to three days." (*Id.* at 5).

State law-enforcement officers eventually caught Thacker by conducting a series of controlled buys using a confidential source. (*Id.* at 5–7). On at least one occasion, "Thacker's three minor children" were in the car with him during a controlled buy, along with "two, live .380-caliber pistol rounds in the trunk." (*Id.* at 7). A search of his home later revealed "831 grams of Alpha-PVP in the master bedroom [and]. . . two firearms in the master bathroom adjoining the master bedroom, including a Ruger 9 mm pistol; and an Armscor .45-caliber pistol. Both pistols contained fully-loaded magazines. In the garage of the residence, agents discovered a Remington 870 12-gauge shotgun, and a Mossberg 20-gauge, bolt-action shotgun." (*Id.*). Even after his arrest, Thacker called a co-conspirator to grab "a sum of money concealed in a vegetable can with a fake compartment" that the officers missed during the search. (*Id.*). A second search of his home revealed the "$10,400 in cash in a vegetable can with a false compartment, [] $2,500 in cash from a green bank bag[,]. . . glass smoking pipe with residue, a fully-loaded 9 mm handgun magazine, and a plastic bag containing approximately five grams of bath salts." (*Id.*). The total relevant conduct involved nearly 6,000 grams of Alpha-PVP. (*Id.* at 9).

While committing these offenses, Thacker was obese and "was diagnosed with elevated blood pressure and cholesterol, anxiety, bilateral hip pain, degenerative joint disease, and recurrent groin abscesses." (*Id.* at 16). "He was also treated for chronic respiratory issues." (*Id.* at 17).

### C. Thacker's Motion for Compassionate Release

In 2020, Thacker moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s Mot. for Compassionate Release at 1). He contends that serious medical conditions—obesity, sleep apnea, high blood pressure, high cholesterol, degenerative joint disease, "bad hip joint," and low potassium—make him especially vulnerable to the COVID-19 virus. (*Id.* at 3).

The COVID-19 virus, of course, is now a global pandemic. At FCI Forrest City Low, 56 inmates currently have COVID-19; 617 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Dec. 3, 2020).[1] In brief, Thacker argues that his increased risk of experiencing serious complications if he contracts COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Mot. for Compassionate Release at 1).

## II.   LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants considering the COVID-19 pandemic. Even so, the defendant bears the burden of showing <u>not only</u> that he faces an increased risk from the virus, <u>but also</u> that incarceration is no longer necessary to advance the purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Thacker failed to meet that burden.

---

[1] *Available at* https://www.bop.gov/coronavirus.

### A.  Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristic of the defendant;

(2) the need for the sentence imposed—

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . .;

>    (5)    any pertinent policy statement—
>
>           (A)    issued by the Sentencing Commission . . .; and
>
>           (B)    that . . . is in effect on the date the defendant is sentenced[;]
>
>    (6)    the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>    (7)    the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is, or is not, appropriate. *See Shannon*, 518 F.3d at 496.

### B.  The § 3553(a) Factors Weigh Against Compassionate Release

The Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons is in the best position to know which inmates are most vulnerable to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 8,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Dec. 3, 2020).[2] Although not bound by any BOP determination,

---

[2]    *Available at* https://www.bop.gov/coronavirus/.

the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Thacker was sentenced to a lengthy term of imprisonment just two years ago because of his role in a serious drug conspiracy. His medical conditions that now make him too "frail and vulnerable" for incarceration were, of course, present when he was selling bath salts imported from China—a plan that he concocted while incarcerated for another crime. Not only was Thacker responsible for spreading a deadly chemical substance to the public, but he also did so while heavily armed, sometimes in the presence of his three minor children. Thacker's crimes are reprehensible at best, and the Court will not risk the safety of the community by releasing him from confinement a decade early. Put differently, even given the COVID-19 virus and Thacker's increased vulnerability to it, his incarceration remains necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment and drug treatment, to protect the community, and to deter future crimes from Thacker and others.

### III. CONCLUSION

The Court **DENIES** Defendant Dennis R. Thacker's Motion for Compassionate Release.

**IT IS SO ORDERED.**

**Dated: Thursday, December 3, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
